IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **GILARDI C. BURNS,** ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 15-cv-0608-MJR |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM AND ORDER**

**REAGAN, Chief District Judge:**

In October 2013, Gilardi C. Burns was indicted on a charge of being a felon in possession of a firearm. He subsequently pleaded guilty to the charge without the benefit of a plea agreement, with the parties instead filing a document they called an "Agreement to Plead Guilty." Burns ultimately was sentenced to 18 months in prison. He did not file a direct appeal, but on June 2, 2015, he filed a petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  In his petition, Burns seems to advance four basic arguments—he maintains that he received ineffective assistance of counsel, that he was deprived of due process because his predicate offense was not a felony, that the mental health treatment condition of his supervision is unlawful, and that he did not receive credit from the Bureau of Prisons for 30 days of inpatient drug treatment he was ordered to obtain while on pretrial release.

On December 21, 2015, the United States filed a motion for an order to show cause for failure to prosecute, arguing that Burns failed to keep the Clerk of Court and

1

the United States informed of his address as required by Local Rule 3.1(b). The United States requested that the Court issue an order to show cause that warned Burns that failing to comply with Local Rule 3.1(b) may result in dismissal of his petition. Burns was given a deadline to respond, and he did not. The United States then responded to Burns's petition, and Burns did not file a reply brief. The motion by the United States and the merits of Burns's petition are now before the Court for a ruling.

## Background

On June 17, 2013, officers with the Fairview Heights Police Department were called to Burns's residence where they spoke to a woman who identified herself as Burns's girlfriend. The woman told police that she and Burns were arguing, and she told him she wanted to leave. When she tried, Burns retrieved a shotgun and, while holding it, told her that he would kill her if she left, leading her to call 911. The officers next spoke to Burns, who told them that he did not have any weapons inside the home and signed a form consenting to a search of his home. The consent search turned up the two shotguns, the Remington 870 and the Benelli shotguns listed in the indictment, and a box of .410 caliber shotgun shells along with some loose shells. Burns was then transported to the police station. During the ride to the station, which was audio and video recorded, Burns spontaneously volunteered to the officer driving him that he purchased the shotguns for $150 and kept them for personal protection. After waiving his *Miranda* rights, Burns gave a recorded statement at the police station in which he told a detective that he applied for a Firearm Owner's Identification card but was denied because he had a prior felony conviction. During the interview, Burns admitted

2

that the shotguns were his, that he hid the shotguns in the basement while he was on the phone with 911 operators, and that he voluntarily signed the consent form to allow the police officers to search his home.

At the time of his arrest, Burns had a previous felony conviction for Making a False Application or Affidavit. Burns was sentenced to a term of probation for the offense.  On October 23, 2013, Burns was indicted for violating 18 U.S.C. §922(g)(1), often referred to as a felon in possession charge, for possessing the two shotguns while having previously been convicted of an offense punishable by a term of imprisonment exceeding one year. He was appointed a federal defender, and the defender began reviewing discovery documents and preparing a defense for Burns. Burns, however, decided to retain private counsel. Before Burns could hire counsel, at the direction of the U.S. Probation Office, he entered a 30-day residential substance abuse treatment program. New counsel for Burns, William D. Stiehl, Jr., entered his appearance on July 16, 2014. After his release from the treatment center, Burns's bond was revoked after the Magistrate Judge found that Burns possessed cocaine with intent to distribute while on pretrial release.

On October 31, 2014, Burns pleaded guilty pursuant to a written stipulation of facts and agreement to plead guilty, both of which were signed by him, his attorney, and the Assistant U.S. Attorney. During the hearing, the petitioner represented to the undersigned that the signatures on the documents were his and that he had reviewed both with his attorney and understood them. The stipulation of facts laid out the events leading up to the Fairview Heights Police Department's discovery of the two shotguns

in Burns's house in detail, including that Burns admitted hiding the shotguns and that he consented to the search of his home by police. Burns also stipulated that he had previously been convicted of a crime punishable by more than one year in prison.

The agreement to plead guilty was not a typical plea agreement. The first paragraph explained that Burns fully understood that he was giving up certain rights by pleading guilty, including the right to file pretrial motions such as a motion to suppress. According to the agreement, the parties agreed to the elements of the offense and statutory penalties, but they did not reach an agreement as to the applicable sentencing guidelines. Burns believed that his offense level was a 13, lower than the offense level 17 that the United States calculated. Neither the United States nor Burns agreed to recommend a sentence within the applicable guidelines range. The agreement did not contain a waiver of Burns's appellate rights. At sentencing, the Court calculated Burns's guidelines based on offense level 13 and criminal history category I, resulting in a sentencing range of 12-18 months. He was sentenced to 18 months of incarceration followed by two years of supervised release. Burns did not appeal his conviction or his sentence. He did, however, file a motion to vacate or correct his sentence pursuant to 28 U.S.C. § 2255 on June 2, 2015.

## Discussion

Burns filed his petition pursuant to 28 U.S.C. § 2255, which allows a petitioner to attack the validity of his sentence if it was "imposed in violation of the Constitution or laws of the United States," if the sentencing court imposed sentence "without jurisdiction," if the sentence was "in excess of the maximum authorized by law," or if

4

the sentence is "otherwise subject to collateral attack." Burns provides four grounds for vacating or otherwise modifying his sentence: (1) that he received ineffective assistance of counsel from his retained attorney, William Stiehl, Jr.; (2) that the predicate offense for his conviction under 18 U.S.C. § 922(g)(1) was not an offense punishable by more than one year of imprisonment; (3) that the mental health treatment condition of his supervised release is excessive and unwarranted; and (4) that the Bureau of Prisons improperly denied him credit towards his sentence for the thirty days he spent in inpatient drug treatment while he was on pretrial release.

To make out a claim for ineffective assistance of counsel, a petitioner must show both that his counsel's performance was deficient and that, but for counsel's performance, a "reasonable probability exists that he would have received a different sentence." *Mertz v. Williams*, **771 F.3d 1035, 1043-44 (7th Cir. 2014).** Both aspects of this test must be demonstrated by a § 2255 petitioner to succeed on a habeas claim—if a prisoner fails to make an adequate showing on deficient performance or prejudice, he has not established ineffective assistance. *United States v. Montgomery*, **23 F.3d 1130, 1134 (7th Cir. 1994).** A reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington*, **466 U.S. 668, 689 (1984).**

Burns's claim of ineffective assistance seems to allege that his attorney gave him misleading advice regarding whether to plead guilty and did not disclose the contents of the documents Burns signed, presumably referring to the stipulation of facts and the agreement to plead guilty. Burns does not specify how he was misled, but he does

5

complain that he feels he was "abandoned" by his counsel, who he describes as uncommunicative and unfamiliar with the facts and the law applicable to his case. He also claims that he was unaware that the documents he signed "caused [him] to be found guilty" and that by signing them he waived his rights to move to suppress evidence and to appeal his conviction. (Doc. 1, p. 4). Despite Burns repeatedly noting in his petition that the agreement to plead guilty included a waiver of his appellate rights, it did not. He was free to appeal his conviction and sentence after his plea.

Burns's vague, undeveloped ineffective assistance claim fails to establish that his attorney's performance was deficient. Burns complains about his attorney's performance leading up to his change of plea hearing, but Burns appeared before the Court at his change of plea hearing and engaged in a lengthy Rule 11 colloquy. Burns confirmed under oath that he had read and understood the plea documents that the parties presented to the Court. He also told the Court that he had gone over them with Mr. Stiehl:

> Q: Okay. Were you able to read and understand the Agreement to Plead Guilty and the Stipulation of Facts in this case?
>
> A: Yes.
>
> Q: You didn't have any trouble doing that?
>
> A: No.
>
> Q: Was Mr. Stiehl able to explain those to you to your satisfaction?
>
> A: Yes, he was.
>
> Q: Do you believe you understand both of the documents?

> A: Yes.

**Change of Plea Transcript at 4-5,** *United States v. Gilardi C. Burns*, **13-30233, Doc. 74 [hereinafter "Plea Tr."].** Later, the Court asked Burns if he was satisfied with Mr. Stiehl's performance as his attorney:

> Q. Are you fully satisfied with the counsel, representation and advice Mr. Stiehl has given you?
>
> A. Yes, sir.
>
> Q. Is there anything he refused to do or been unwilling or unable to do with respect to defending you?
>
> A. No.
>
> …
>
> Q. Has anyone used threats, coercion, duress, force or made any promises, assurances or guarantees of any kind to get you to plead guilty to this offense; number two, to get you to sign and agree to the Agreement to Plead Guilty; and number three, to get you sign and agree to the Stipulation of Facts?
>
> A: No, Your Honor, I requested it.

Plea Tr. at 7-8. Burns went on to tell the Court that he went over the documents in detail with his attorney, that he fully understood the documents, and that he had reviewed the sentencing guidelines with his counsel. *Id.* at 8-9. The Court explained the rights Burns would be giving up by pleading guilty, including his right to persist in his plea of not guilty and to go to trial and, importantly, rights under the Fourth Amendment "such as the right to challenge any illegal search, seizure, lineup or statement that may have occurred." *Id.* at 11-12. Burns told the Court that he understood the rights he was giving up by pleading guilty. The waiver of these rights, including the right to file a

7

motion to suppress evidence, was also covered in the first paragraph of the agreement that Burns signed before the hearing. After confirming that he understood both the charges against him and the proceedings at the change of plea hearing, Burns pleaded guilty, and the Court found that his plea was knowing, voluntary, and supported by the facts in the parties' stipulation. *Id.* at 15. The representations Burns made to the Court at his change of plea hearing are entitled to a presumption of verity, and he has not alleged sufficient facts in his petition to undercut that presumption. *See Barker v. United States*, **7 F.3d 629, 634 n.5 (7th Cir. 1993).**

Burns faces an uphill battle to establish that his attorney's performance was ineffective. In the context of a guilty plea, to establish the "prejudice" requirement of the test for ineffective assistance, Burns must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, **474 U.S. 52, 59 (1985).** Burns does not allege that he wanted to go to trial or would have gone to trial but for his counsel's performance. He seems to suggest that he may have wanted to file a motion to suppress, but, both in court and in writing, Burns acknowledged understanding that he was giving up that right by pleading guilty. Additionally, the record indicates that he wanted to plead guilty. As he told the Court regarding the agreement to plead guilty, the stipulation of facts, and his guilty plea itself, "I requested it." Plea Tr. at 8.

Burns now alludes to issues he had with communicating with his attorney and asserts that he was pressured to plead guilty. He does not provide any details to support these claims. At one point, Burns did write to the Court and indicate that he

8

was having issues reaching his attorney by phone and that Mr. Stiehl had not filed a motion for his release on bond as he requested. (*United States v. Burns*, 13-CR-30233, Doc. 51).[1] The Court docketed the letter, admonished Burns not to correspond directly with the Court, and noted that defense counsel would presumably address the issues raised in the letter. This all occurred before the change of plea hearing, however, where Burns said that he was happy with Mr. Stiehl's representation, that no one had pressured him to plead guilty, and that there was nothing he had asked his attorney to do that his attorney refused to do. Burns faced strong evidence suggesting his guilt, and his attorney assisted him in pleading guilty and receiving a lower guidelines range by accepting responsibility. Bare bones allegations of ineffective assistance that lack support in the record are insufficient to establish that Mr. Stiehl acted at a level below an objective standard of reasonableness or that Burns suffered any prejudice as a result of his attorney's performance.

The attempts Burns makes to cast his lawyer as derelict fly in the face of his admissions at his plea hearing. As the Court already said above, Burns told the Court that he understood the rights he was giving up by pleading guilty and that he was satisfied with his lawyer's performance. Those admissions, in conjunction with the written documents Burns signed and submitted to the Court, cast serious doubt on his statements now that his lawyer was not forthright or competent in counseling him. As

---

[1] The Court notes that Mr. Stiehl addressed these allegations in an affidavit attached to the Government's response to Burns's petition. According to Mr. Stiehl, Burns's calls were "unfocused, repetitive and lengthy," leading to a bill in excess of $500.00 from Securus, the manager of inmate telephone communications. Despite rejecting calls after receiving that bill, Mr. Stiehl counters that he did keep Burns informed of the status of his case. The Court, however, did not consider the affidavit in reaching its conclusion on the issue of Mr. Stiehl's effectiveness as counsel.

the Court already noted, Burns's statements to the undersigned are entitled to a presumption of verity, and he has not alleged enough to put that presumption into doubt. *See Hutchings v. United States*, **618 F.3d 693, 699 (7th Cir. 2010).**

Burns's next argument in his petition is that he did not have a predicate offense on his record to support his conviction under 18 U.S.C. 922(g)(1), which states that "[i]t shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition." Burns posits that he does not have a predicate felony offense on his record because he was sentenced only to probation, not imprisonment, for the predicate offense listed in the indictment, a prior conviction for "Making False Application or Affidavit" in violation of 15 ILCS 335/14C. A first offense under this statute is a Class 4 Felony in Illinois. 15 ILCS 335/14C(b)(1). For the purposes of § 922(g)(1), the predicate offense need only be punishable by a term of imprisonment exceeding one year. It is not required for a person to be sentenced to any term of imprisonment for his prior conviction to be considered a predicate offense under the statute. A Class 4 felony in Illinois is punishable by a minimum term of imprisonment of not less than one but not more than three years imprisonment. 730 ILCS 5/5-4.5-45. Despite Burns's assertion that he was not, in fact, sentenced to prison, the crime for which he was convicted was punishable by more than one year in prison. It is the maximum penalty for Burns's previous conviction that controls, and his previous conviction for Making a False Application or Affidavit satisfies the predicate offense requirement for a conviction under § 922(g)(1).

Burns next complains in his petition that he is being subjected to "unlawful excess supervision" because the Court added a condition to his supervised release that requires Burns to participate in a program of mental health treatment, including treatment for anger management, domestic violence, cognitive skills, or other forms of therapy or counseling. The justification given for this condition is based on Burns's prior attempt at suicide and his mother's indication that he has a history of paranoia, that he has a short temper and a history of abusive relationships, and that he witnessed his father's abusive behavior in his home. Burns suggests in his petition that he has no mental health issues or history of domestic violence or other violent crimes. Burns ignores that the basic facts of the charge in the indictment include him threatening his ex-girlfriend with a shotgun during an argument as she tried to leave him. This Court enjoys "wide discretion in determining conditions of supervised release." ***United States v. Adkins*, 743 F.3d 176, 193 (7th Cir. 2014).** Conditions must be appropriately tailored and adequately justified. ***United States v. Kappes*, 782 F.3d 828, 867 (7th Cir. 2015).** Based on the information before the Court about Burns's history of mental health issues and the offense conduct, the condition requiring participation in a mental health program was justified and was enacted with the hope of reducing recidivism and of easing Burns's re-entry into society. *See United States v. Wilson*, **154 F.3d 658, 667 (7th Cir. 1998)(finding the district court's decision to impose a mental health treatment program requirement justified where the defendant's mother indicated a history of mental health issues).** Despite Burns's complaint that the condition is unlawful and excessive, there is no support in the record for finding that the addition of the condition

11


was an abuse of the Court's wide discretion in imposing the terms of supervised release.[2]

Burns's final argument is that the Bureau of Prisons did not credit him for thirty days he spent in a residential drug treatment program before trial. Motions that seek relief for the execution of the sentence, as opposed to the validity of the underlying conviction, should be brought under 28 U.S.C. § 2241 and not in a petition under § 2255. *See Valona v. United States*, **137 F.3d 693, 695;** *see also United States v. Koller*, **956 F.2d 1408, 1417)(noting that the authority to give credit for time served rests with the Attorney General and that a district court only has jurisdiction review the Attorney General's decision on a request for presentence credit under § 2241).** Burns is seeking relief, essentially, for being in prison, in his opinion, 30 days longer than he should have been because he did not get credit for the pretrial treatment program. This argument falls squarely within the domain of § 2241. Even if there was some recourse available to Burns under § 2255, the time he spent in the residential treatment program while on pretrial release, no matter how restrictive of his liberty, is not required to be counted towards his sentence by the BOP because he was not held in "official detention". *Reno v. Koray*, **515 U.S. 50 (1995)(holding that an inmate was not held in "official detention" while held at a community treatment center during pretrial release).**

---

[2] Additionally, Burns is no longer subject to this term of supervised release rendering his argument moot. Burns served his term of imprisonment and was on supervised release in 2015 when a petition to revoke his supervised release was filed. He was sentenced on January 25, 2017, to a term of imprisonment of 9 months to be followed by no additional term of supervised release. *See United States v. Gilardi C. Burns*, 13-CR-30233 (S.D. Ill. 2017).

For the foregoing reasons, Burn's petition is **DENIED**. The Court, finding no merit to Petitioner's claims, further finds that warning Burns of the potential for dismissal of this action for failure to prosecute would serve little purpose. The Government's motion for an order to show cause is **DENIED as MOOT.** Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, the Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant, as the applicant cannot appeal without one. The habeas statute provides that a certificate may issue only where the petitioner "has made a substantial showing of the denial of a constitutional right," **28 U.S.C. § 2253**, as would be the case when "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Slack v. McDaniel***, 529 U.S. 473, 484 (2000).** Based upon the record before it, the Court concludes that reasonable jurists would not find Burns's points debatable, so the Court must deny a certificate of appealability.

## Disposition

Burns's § 2255 petition (Doc. 1) is **DENIED**. The Court further **DENIES** a certificate of appealability. The Government's motion for an order to show cause is **DENIED as MOOT.** The **CLERK** is **DIRECTED** to enter judgment in favor of the United States and against Burns.

**IT IS SO ORDERED**.

DATED: February 3, 2017

*s/ Michael J. Reagan*
MICHAEL J. REAGAN
**Chief Judge**
**United States District Court**